Caldwell, J.
There are two cases here upon different policies of insurance. Samuel Block, who lived in this state and county, made two applications to this life insurance company for policies, one of which was issued some three years ■ before his death, and the other a few months before. These policies were in full force unless defeated by the matter set up in the answers of the insurance company. After the death of Block separate suits were brought in the common pleas court of this county for the collection of the amount due on the policies. In each case there was a judgment for the plaLitiff below, and the insurance company has brought the case to this court, alleging error.
In one of the cases it is contended that there is no error that this court can review, in the first place, under the decision of this court, it being claimed the court erred in the law in its charge and also in the rulings during the trial, because a bill of exceptions was not taken until more than fifty days after the time of such error, which was at the time of the trial.
As to whether the judgment in the case would be justified under the testimony received in the-case, it is claimed, upon final hearing, that we cannot examine into this question, because, although the bill of exceptions says that it contains all the testimony, yet it is the law of this state that if the court, upon looking into the bill, finds, as a matter of fact, that it does not contain all the testimony in the case, that the question cannot be considered by the court. It is insisted that, notwithstanding the assertion at the close of the bill of exceptions that it contains all the testimony,, it shows upon the face of it that it does not,as a matter of fact,contain all the testimony that was offered. Various depositions were offered and read upon the hearing, and among others was the deposition of Dr. Meyers Lee King, and all there is in regard to that deposition appears on page 62 of the bill of ex *226 ceptions. Question 1 is objected to by the plaintiff and overruled, and the plaintiff excepts, and there is the same objection, ruling and exceptions to Nos. 2, 3, á, 5, 6, 7, 8, 9, 10, and some other of the questions asked of the witness in that deposition; and there are rulin6s where the plaintiff objects and the objection is sustained and the defendant excepts; and at the close of these rulings and exceptions the counsel offering the deposition says: “We offer to prove that each of the answers to the questions excluded are as written in the deposition.”
This is substantially all there is in this bill of exceptions as to this deposition. It is not attached, and there is nothing here showing that it is made a part of the bill of exceptions. Nothing here showing, in so many words, that any part of this deposition was read to the jury. It is left, then, for us to determine whether, when a deposition is spoken of in the testimony as though it was offered, and it appears that some parts are offered and objections made to those parts and the objections are overruled, and the party objecting takes exception, it is fair and right to hold that that is sufficient to show that the deposition was presented to the jury. While the question may be a little close, and a little uncertain, we hold in this case that that testimony, where the objections were made and overruled, was read to the jury; that being the case, that evidence is not here; and that being true, the only question to be considered by this court in case No. 1157 is entirely removed form the consideration of the court, and that being true it entirely disposes of that case. . . ■
In the other case, No. 1159, the answer of the insurance company sets up that in the application there was an agreement, which was carried also into the policy, between the insured and the insurer that all statements in the application were to be regarded as warranties, and being so regarded, if any of them were untrue, it should entirely nullify the policy.
*227 The answer then goes on to state that under the law of New York, warranties in regard to answers in an application are to be given full force and effect, and if any of them are false, the effect is the same as in the case of misrepresentations in making any other kind of a contract.
It further states that it was agreed by the parties making the contract in the application and in the policy, that the contract should be construed as to its validity and effect, as to all questions between them, under the law of New York, the law of any other state to the contrary notwithstanding.
It is claimed in the answer that Mr. Block, in making this contract, whatever advantage he had or might have under the laws of Ohio, had completely waived all such rights, and the beneficiaries under this contract have such rights only as are afforded by the laws of New York, when applied to construction and determination of the rights of the parties under this contract.
The answer then sets up as a first defense, in addition to the facts already stated, a number of matters, wherein Block had made misrepresentations in regard to whether he had disease, whether he ever had a physcian, and various other matters; also that the agent had no knowledge that he had other insurance. Then, for a second defense, it sets up tnis matter of warranty, that the assured had made these representations which were false; that [they were fraudulently false, the assured knowing at the time he made them that they were untrue.
This case went to trial upon the issues made, and the defendant offered to prove everything alleged in its first defense. The court excluded all the testimony offered under that defense. Thereupon the insurance company stated to the court that it had no evidence to offer upon its second defense, and the court then ordered the jury to bring in a verdict for the amount of the policy and interest on it, which was done. Exception was taken, and the case brought here.
*228 The precise question in this case is simply this: Here is an insurance company which has its residence in the state of New York. Under the laws of Ohio it is permitted to do business in Ohio. This contract was made by Mr. Block, being solicited by the agent of this company here in Ohio. The application was made here. The money that was required to be paid was sent on to New York. After the company had concluded in New York to issue the policy, it was sent here by mail to the agent for delivery to Mr. Block. The policy and the application both provided that this contract should be regarded as a New York contract, and not an Ohio contract. The question which arises is, when this contract issued upon in an Ohio court,as to whether this question of warranty is to be construed under the law of New York, or whether the provisions of the statutes of Ohio have the controlling influence in the case. The court below held that this contract is controlled, as between these parties, by the Ohio statutes, and therefore excluded all the testimony as to the truth of the answers contained in the applications.
The section of the Ohio statute relied upon by the plaintiff in the hearing below is section 3625: “No answer to any interrogatory made by an applicant in his or her application for a policy, shall bar the right to recovery upon any policy issued upon such application, or to be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is willfully false, and was fraudulently made; that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and, moreover, that the agent of the company had no knowledge of the falsity or fraud of such answer,”
Also section 3626: “All companies, after having received three annual premiums on a policy, issued on the life of any perse n in this state, are estopped *229 from defending upon any other ground than fraud, against any claim arising upon such policy by reason of any errors, ■omissions or misstatements of the assured in any application made by such assured upon which the policy was issued, except as to age. ”
I think it proper that these two sections should be read together. The policy was issued, and the question arises' whether it can be avoided after a certain number of annual premiums have been paid by the assured, or have been received by the insurer.
It is evident that if the law of Ohio is applied to this contract, the court below was right in excluding this testimony. If the law of Ohio does not apply, then the court was wrong.
A large amount of law has been cited, many cases that have some bearing upon this question, yet we may say that no case has been cited during the trial of this case that is a fair and square solution of the exact question before the court. There is no question but that a majority of the cases cited and read by the counsel for the insurance company, and also those cited in the last brief we have received, is good law. The only question is whether it is applicable to this case. There can be no question but that, as a general rule, where one of the parties to a contract resides in one state and the other in another, or where they both live in one state, and the contract" is carried out in another, and under other circumstances that might be named, the parties can contract with reference to the law of either state, and, having so contracted, the court that construes their contract, and determines its validity, will determine it by the law that they have made a part of the contract.
But, when this is admitted to be the general rule, it is claimed on the other side that there are exceptions, and one of those exceptions is, that where the state has established some rule of law in regard to a matter, to shield and protect *230 its own citizens, that law shall govern and control in the making of such contracts; and where a contract is made by a party out of the state, whether the contract is made in the one state or in the other, that the law of the state where one of the parties resides, which throws its protecting shield over all the citizens of the state, is the law that will con trol the rights of the parties under the contract, if the law of the two places in any way conflict.
We have been cited to many cases in point upon that proposition, and we are,compelled to say that that is the law.
As to insurance contracts, where there are questions arising such as we have in this case, it is not a complete solution of the question, because the cases cited upon that point do not extend to cases where the parties have themselves agreed that the law of another state shall govern their rights under the contract of insurance that is made. This being true, we must therefore go a step forward and say what the law should be in a case like the one at bar.
It is contended by counsel for the insurance company, both in the oral argument and in the brief we have received, that there in no public policy involved in the statute of Ohio that we have read, and therefore that the parties are at liberty, under the circumstanes of this case, to say what law shall control their rights under the contract. Upon that question we have a case in point in our own state, 47 Ohio St., page 409, Insurance Company v. Leslie. In that case our own Supreme Court said:
“It is contended by counsel for the plaintiff in error that this statute does not apply to this policy because, first, the policy contained an agreement essentially different from the terms of the statute, which, it is claimed, it was incompetent for the parties to make, and by which they are mutually' bound; and, second, no examination of the property was made by the agent of the company, and they further contend that if the statute governs the policy, the statements in the application, of the value and condition of the property, constituted an intentional fraud.
*231 “The statute rests upon considerations o£ public policy; one of its purposes being, to exact of insurance companies doing business in this state, reasonable diligence and care to avoid improper risks and over-insurance, by requiring their agents to make personal examination of the property, and fix its insurable value,before writing the insurance.”
This was a case of fire insurance. The statute under consideration in the case at bar is not precisely the same as the one in 47 Ohio St., but in stating the objects of these statutes the court, on page 413, says:
“The conditions contained in policies of insurance, both life and fire, and the exceptions to the risk, and the contingencies upon which the company should be relieved from liability, became so numerous and conflicting, usually ' printed in small type on the back of the policy, in terms which persons unused to the law or business of insurance would not readily understand, that it became a matter of no little difficulty for the assured to tell whether the policy afforded him any indemnity or not. ’ ’
On page 417 the court further says: “The statute cannot, we think, be treated as conferring upon the assured a mere personal privilege which may be waived or nullified by agreement. It has a broader scope. It moulds the obligation of the contract into conformity with its provisions, and establishes the rule and measure of the insurer’s liability. Terms and conditions embraced in the policy, inconsistent with the provision of the statute, are subordinate to it, and must give way. ”
That brings us fairly to a consideration of the question whether, in the making of a contract, the parties having agreed that the law of another state shall control and determine their rights under it, the law so agreed upon shall thus control. In the case of The Equitable Life Insurance Company v. Clements, 140 U. S., 226, the assured, in the policy, agreed to waive and relinquish all right or claim to *232 any other surrender value than that provided in the policy, whether required by a statute of any state or not. The court found that the contract was a Missouri contract, as it was to be delivered in Missouri, and the premium was to be paid before it could have any binding force whatever. The law of Missouri having provided what shall be done by the insurance company in case a number of the premiums have been paid and then no further payments made, the court held that the parties could not by agreement evade or' nullify these provisions of the statute; that the rights of the parties under the contract were to be determined by the law of Missouri. The language of the court is: “It follows, from what has been said, that the insertion in the policy of a provision for a different rule of commutation from that prescribed in the statutes, in case of default of payment of premium after three premiums have been paid, as well as the insertion in the application of the clause by which the beneficiary purports to waive and relinquish all right or claim to any other surrender value than that so provided, whether required by statute of any state or not, is an ineffectual attempt to evade and nullify the clear words of the statute.”
That brings us one step nearer to the question under consideration, and that is this: If the parties reside in different states, the assured in one state and the insurer, as it is assumed, in another, and a contract is so made that it is construed as a contract made under the laws of the state where the assured reside^, and in such a contract the attempt is made to evade the law of that state, and the provisions thus entering into the contract are null and void, then there remains in this case this question only: If the parties reside in different states, and the contract, under the ordinary rules of law, is to be regarded as a contract of the state where the insurer lives, and in such contract they agree to evade the laws of the state where the assured' lives, what shall be the law applicable to such a case?
*233 We cannot decide that question without considering, to some extent, these facts: Before this insurance company could do any business in Ohio it had to do certain acts to comply with the statutes of Ohio, as set out in section 3604, and a number of sections following. Among other things it had to establish an agent in this state upon whom service could be made. This insurance company, while not a corporation of Ohio, yet has been permitted to avail itself of the right under the law of doing business in the state, and we think it is a fair implication that, in doing business with the citizens of the state of Ohio, it will conform, in such policies and contract as it makes, to the laws of Ohio. Then we do not in this case have a party who resides in New York state exactly, but we have a party who resides in Ohio, a party who has an assumed residence in another state, but who has come into Ohio to do business upon such terms as is prescribed by this state. We think it is fair, under such circumstances, to say that, in doing business in Ohio, it ought to be understood that it will do business in accordance with Ohio laws, so far as those laws are founded in public policy.
The decision in the 47 Ohio St., we think, extends not only to fire insurance, but to life insurance as well, and when that court says that the law as to fire insurance is founded in public policy, it can be as truly said that the law of Ohio to which we have referred in this case, is also founded in public policy. It is our opinion, therefore, in this case, one of the parties residing in Ohio, the contract in part being made here, at least to be carried out here, the other doing business in Ohio under Ohio law, that they cannot, by agreement, evade laws of Ohio founded in public policy.
It is claimed by the counsel for the insurance company that the Ohio statute referred to is unconstitutional, under the fourteenth amendment of the constitution providing that no state shall enact a law that does not give equal *234 lights to all citizens. This amendment was intended to prevent class legislation. But if the legislation is for a public purpose, and affects alike all persons similarly situated, then it is not within the amendment. This was decided in 113 U S., 31, and in 70S.. The latter case was where a city undertook by ordinance to provide that laundries in certain parts of cities should not run during certain hours, and it was held that it was not within article 14 of the constitution of the United States.
In 120 U. S., 68, it was held that a statute allowing the state, in capital cases, fifteen peremptory challenges to jurors in cities having a population of over one hundred thousand, while only eight challenges are allowed in other parts of the state, is not obnoxious to the amendment.
On page 71 the court say: “The fourteenth amendment to the constitution of the United States does not prohibit legislation that is limited either in the objects to which it is directed, or witihn the territory within which it is'to operate. It merely requires that all persons subject to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and liabilities imposed. ”
It is contended that the life insurance companies doing business in the state of Ohio are subjected to a law different from that to which fire insurance companies are subject.
It has been decided by the United States Supreme Court that a law requiring certain dentists, before they can practice dentistry, to procure a diploma from a dental college, where as those in the practice at the passage of the law are exempt from its operation is not within the fourteenth amendment of the constitution. That court has made the same holding in regard to a law as to the qualification of physicians before they can practice, making . an exception as to physicians already in practice, the two classes being entirely distinct. So a statute in regard to dry goods merchants *235 can not be said to be unconstitutional, because it does not apply to merchants in the grocery business, although it in some way touches the business of both merchants. Here are two distinct classes, fire insurance and life insurance, and, clearly, under these decisions of the United States Supreme Court a rule of law that applies to the one is not unconstitutional because it does not apply to the other. It is a different subject-matter. They are not in the same class. We think the law of Ohio is not unconstitutional, and the judgment of the court below is affirmed.
John A. Finch and Charlas F. Pennewell, for Plaintiff in error.
White, Johnson & McCaslin, for Defendants in error.