## CONNOR et al. v. EXCESS INS. CO. OF AMERICA.*
### No. 4455.

Circuit Court of Appeals, Third Circuit.

Aug. 13, 1931.

*Rehearing denied November 4, 1931.

J. A. Hartpence and Wall, Haight, Carey & Hartpence, all of Jersey City, N. J., and Stout & Spencer, of St. Louis, Mo. (Thomas G. Haight, of Jersey City, N. J., of counsel), for appellants.

Lum Tamblyn & Colyer, of Newark, N. J. (Chester W. Fairlie, of Newark, N. J., and Solomon J. Rosenblum, of New York City, of counsel), for appellee.

Before BUFFINGTON and THOMPSON, Circuit Judges, and THOMSON, District Judge.

THOMPSON, Circuit Judge.

The appellants, plaintiffs below, are copartners doing business in the state of Missouri and are citizens of that state. The appellee, defendant below, is a corporation of

New Jersey, having its home office at Newark. The appellants recovered a judgment against the appellee in a court of record of the state of Missouri upon a policy of liability insurance issued by the appellee. They brought suit at law in the District Court for the District of New Jersey on that judgment. Upon trial by the court without a jury, judgment was entered for the defendant, whereupon this appeal was taken.

There is little controversy concerning the facts. The controversy is upon the effect to be given, as matter of law, to the facts proved.

The policy, upon which suit was brought, was negotiated through the firm of W. H. Markham & Co. On June 15, 1927, one O'Halloran, manager for W. H. Markham & Co., who were residents and doing business at St. Louis, Mo., wrote to Gibbs, president of defendant, inquiring whether Gibbs would be willing to write a policy for the plaintiffs to cover liability risks for tunneling operations being performed by the plaintiffs in North Carolina. The plaintiffs had not then been approached upon the subject. Gibbs on the following day replied by telegram, and on June 21 by letter, declining to write the policy in the form proposed, but suggested another form. After further correspondence, the terms of the policy were agreed upon, and on July 19 Gibbs notified Markham & Co. by telegram that the risk was bound as of that day. As a result of additional correspondence, the binding date was fixed as of July 16. On July 30, Gibbs mailed the policy in triplicate to Markham & Co. who, in accordance with instructions by Gibbs, took the policy, upon which suit was subsequently brought, to the plaintiffs in St. Louis, delivered it to one of the plaintiffs, and obtained his signature upon the duplicate which he returned to the defendant at its home office. The premium was paid by the plaintiffs to Markham & Co. who deposited the money to their credit in their bank and sent their check to the defendant for the amount of the premium less Markham & Co.'s commission of 10 per cent.

The plaintiffs claimed reimbursement under the terms of the policy for a loss occurring on August 8, 1927. After the loss, Markham & Co. made up the proofs of loss and sent them to the defendant, but were notified by the defendant that it refused to pay. About six months later in February, 1928, the defendant tendered a return of the premium. They mailed a check to Markham & Co. who turned it over to the plaintiffs' attorneys at the plaintiffs' request. The attempted return of premium was not accepted, and the check was returned to the defendant.

The defendant covered other insurance risks in Missouri. Through Markham & Co., it issued its policy to the Missouri-Kansas Zinc Corporation, which transacted business and had an office in Missouri. The insurance issued to that corporation was still in force at the time plaintiffs' suit was brought in the Missouri court. One Sardius Smith of Missouri also solicited insurance business for the defendant from the Missouri-Kansas Zinc Corporation. The correspondence shows those facts conclusively. The defendant also issued its insurance policy to the Wise-Buchanan Coal Company which was doing business in Joplin, Mo. That insurance was procured through Sardius Smith. When the three copies of the policy were sent to Smith, he, under the instructions of the defendant, had the Wise-Buchanan Coal Company sign all three copies, delivered one to the coal company, kept one for his files, and returned the other to the defendant, all in the same manner in which Markham & Co. transacted business with the defendant for the plaintiffs. The Wise-Buchanan Coal Company's premium was collected by Smith in Joplin, Mo., its check deposited to Smith's account, and the premium, less 10 per cent. for commission, was sent by Smith to the defendant. Later in 1929 the defendant sent Smith a bill for $78 for excess premium upon the coal company's property which he collected and remitted to the defendant, less his 10 per cent. commission. Meanwhile, the defendant had sent Smith an order for cancellation of the policy with cancellation notice. The defendant, however, as a result of correspondence with Smith, issued a binder at increased rate of premium which the coal company refused to accept.

The defendant having refused to pay the plaintiffs' loss, suit was brought on the policy in the circuit court of St. Louis. Process was served upon the members of the firm of W. H. Markham & Co. and upon Sardius Smith. Service was made under the authority of the following sections of the Revised Statutes of 1919 of the State of Missouri:

"Sec. 6310. *Process against foreign companies, appointment of superintendent to receive or accept service of,*—Any insurance company not incorporated by or organized under the laws of this state, desiring to trans-

act any business by any agent or agents in this state, shall first file with the superintendent of the insurance department a written instrument or power of attorney, duly signed and sealed, appointing and authorizing said superintendent to acknowledge or receive service of process issued from any court of record, justice of the peace, or other inferior court, and upon whom such process may be served for and in behalf of such company, in all proceedings that may be instituted against such company, in any court of this state or in any court of the United States in this state and consenting that service of process upon said superintendent shall be taken and held to be as valid as if served upon the company, according to the laws of this or any other state. Service of process as aforesaid, issued by any such court, as aforesaid, upon the superintendent, shall be valid and binding, and be deemed personal service upon such company, so long as it shall have any policies or liabilities outstanding in this state, although such company may have withdrawn, been excluded from or ceased to do business in this state, and in case such process is issued by a justice of the peace or other inferior court, the same may be directed to and served by any officer authorized to serve process in the city or county where said superintendent shall have his office, at least fifteen days before the return day thereof, and such service shall confer jurisdiction. Every such instrument of appointment executed by such company shall be attested by the seal of such company, and shall recite the whole of this section, and shall be accompanied by a copy of a resolution of the board of directors or trustees of such company similarly attested, showing that the president and secretary, or other chief officers of such company, are authorized to execute such instrument in behalf of the company; and if any such company shall fail, neglect or refuse to appoint and maintain, within the state, an attorney or agent, in the manner hereinbefore described, it shall forfeit the right to do or continue business in this state. (R. S. 1909, § 7042.)".

"Sec. 6312. Additional service.—Service of summons in any action against an insurance company, not incorporated under and by virtue of the laws of this state, and not authorized to do business in this state by the superintendent of insurance, shall, in addition to the mode prescribed in section 6310, be valid and legal and of the same force and effect as personal service on a private individual, if made by delivering a copy of the summons and complaint to any person within this state who shall solicit insurance on behalf of any such insurance corporation, or make any contract of insurance, or collect or receive any premium for insurance, or who adjusts or settles a loss or pays the same for such insurance corporation, or in any manner aids or assists in doing either. (R. S. 1909, § 7044.)"

It is conceded that the defendant had not filed an authorization to the superintendent of the insurance department of Missouri to accept service of process for it. Service upon Markham & Co. and upon Sardius Smith was, therefore, made upon them as persons within the state coming within one of the following classes, namely: Those "who shall solicit insurance on behalf of any such insurance corporation, or make any contract of insurance, or collect or receive any premium for insurance, or who adjusts or settles a loss or pays the same for such insurance corporation, or in any manner aids or assists in' doing either."

Upon service thus made, the defendant having entered no appearance, the court, upon proof of the essential facts, found that the defendant was a foreign corporation engaged in doing insurance business in Missouri and subject to the laws of Missouri, that the members of the firms of W. H. Markham & Co. and Sardius Smith, Inc., were some of the agents for the defendant within the state of Missouri soliciting insurance on behalf of defendant and collecting and receiving premiums as agents of defendant from residents of the state of Missouri. The court found the defendant liable upon the policy and contract, and entered judgment for the plaintiffs and against the defendant in the sum of $15,311.-97 and costs.

Upon the proof of those facts in the court below, the District Judge found against the plaintiffs and entered judgment for the defendant, whereupon this appeal was taken.

We have no doubt that the policy in suit in the St. Louis court was a contract made in Missouri. It did not take effect until payment of the premium. The premium was paid in Missouri and the policy was accepted by the assured in Missouri. It became a completed contract upon delivery, acceptance of the policy, and payment of the premium, all of which occurred in Missouri. Therefore, it was a Missouri contract and governed by the laws of Missouri. Equitable Life Assurance Society v. Clements, 140 U. S. 226, 11 S. Ct. 822, 35 L. Ed. 497; New York Life

Insurance Company v. Cravens, 178 U. S. 389, 20 S. Ct. 962, 44 L. Ed. 1116; Northwestern Mutual Life Insurance Company v. McCue, 223 U. S. 234, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57.

The appellee has clearly brought itself within the provisions of the Missouri statute by entering into the contract with the appellant in Missouri and by transacting other business in that state. Since the appellee had not complied with the requirements of the statute by designating the superintendent of insurance as its agent or attorney to accept service for it, the Missouri court was empowered to issue process and to cause service to be made upon those soliciting insurance or making contracts of insurance or collecting or receiving premiums for insurance on its behalf.

In the case of Commercial Mutual Accident Company v. Davis, 213 U. S. 245, 29 S. Ct. 445, 447, 53 L. Ed. 782, where process was served upon a person who adjusted and settled a loss with the policyholder, it was held that the company must be presumed to have acted with knowledge of the statute, and that it could be served with process through service upon some agent within the state designated by the law of the state. Mr. Justice Day said: "It was competent for the state, keeping within lawful bounds, to designate the agent upon whom process might be served. It chose to enact a statute providing that an agent competent by authority of the company to settle and adjust losses should be competent to represent the company for the service of process. When the company sent such an agent into Missouri, by force of the statute he is presumed to represent the company for the purpose of service, and to be vested with authority in respect to such service so far as to make it known to the foreign corporation thus coming within the state and subjecting itself to its laws. Lafayette Insurance Company v. French, 18 How. 404, 408, 15 L. Ed. 451, 453.

The service of process made in the case before us complied with such requirements of the due process clause of the Constitution as the Supreme Court found adequate in the above case. We conclude that the District Court erred in failing to give full faith and credit to the Missouri judgment.

The judgment is reversed, with direction that judgment be entered for the plaintiffs below for the amount claimed in the complaint, with interest and costs.