On January 1, 1934, the National Life and Accident Insurance Company issued to Carrie McClan (Carrie McClaw) an industrial life insurance policy for $165, in which the plaintiff, William Edwards, was designated as beneficiary. All premiums due on the policy were paid up to June 2, 1938, at which time, upon the application of the insured, she secured a reduction in the amount of the death benefit from $165 to $66, with a corresponding decrease in weekly premiums due thereon. The reduced premiums were regularly paid until December 26, 1938, when the payments ceased and the policy lapsed. Carrie McClan (McClaw) died on September 28, 1940. As the designated beneficiary under said policy, plaintiff brought this suit to recover the face value of the policy, as originally issued, i.e., $165, and, in the alternative, in the event that the reduction of the death benefit to $66 be held valid, that he is entitled to recover the amount of the reduced face value, on the theory that, in either instance, the reserve accumulated on the policy was sufficient to extend full coverage thereunder beyond the date of the death of the insured.
The insurer admits the issuance of the policy; the reduction of the death benefit payment due thereunder, and its lapse as of December 26, 1938. Defendant contends that in accordance with the authority granted it by Act No. 57 of 1932, and because of a stipulation contained in the policy providing for automatic paid-up insurance in the event of lapse for non-payment of premiums, the maximum amount of defendant's liability was the paid-up insurance value of said policy, or the sum of $14.59, for which it admits liability.
In other words, plaintiff maintains that the policy was automatically extended for its full face value for a period extending beyond the date of the death of the insured, whereas, defendant contends that because of the policy stipulation, and as permitted by Act No. 57 of 1932, the amount of coverage was reduced to such sum as could be purchased in paid-up insurance through application of the accumulated reserve for that purpose.
From a judgment for plaintiff in the sum of $66, as alternatively prayed for, with interest at six per cent. from the date of death, defendant has appealed.
Under Section 1 of Act No. 193 of 1906, it is therein declared that every contract or policy of life or endowment insurance"shall, * * * contain a stipulation that after three full annual premiums have been paid thereon it shall not lapse or become void or be forfeited for non-payment of any premium thereafter, * * * and that it is issued subject to the provisions of this Act relating to non-forfeiture". (Italics ours).
Section 2 of said act (193 of 1906), prior to its amendment and re-enactment, provided that, where such a policy lapses, "The reserve on such policy * * * shall upon demand with surrender of the policy be applied as a surrender value as agreed upon in the policy, provided that if no other option expressed in the policy be *Page 127 
availed of by the owner thereof, the same without any further act on the part of the owner of the policy, shall be applied to continue the insurance in force at its full amount * * * so long as such surrender value will purchase non-participating temporary insurance * * *". The same section of the statute further provides: "That any attempted waiver of the provisions of this paragraph [section] in any application, policy or otherwise, shall be void".
Act No. 57 of 1932 amended and re-enacted the act of 1906. The provisions of the amending act are similar to those contained in the former act, with the exception that the later act contains an added clause following the word "applied", used in the quoted clause, so that Section 2 of the act now reads:
"Provided that, if no other option expressed in the policy be availed of by the owner thereof, the same [the accumulated reserve], without any further act on the part of the owner of the policy, shall be applied either to purchase upon the same life,at the attained age, paid-up insurance, payable at the same time,and under the same conditions, except as to the payment ofpremiums, as the original policy, or to continue the insurance in force at its full amount, * * *". (Italics indicate the added clause)
When the policy was issued to the deceased by the defendant insurance company, it contained the following non-forfeiture clause, viz.: "Paid-up Policy. After premiums on this Policy have been fully paid for three years or more, then in the event of default of any subsequent premium, this Policy will automatically and immediately on such default be commuted to unconditional, nonforfeitable Paid-Up Endowment Insurance, upon which no further premiums will be required and which shall be of the amount shown in the following table, but any indebtedness to the Company hereon, if not repaid, will reduce the amount of insurance in such proportion as the indebtedness bears to the amount of surrender value used as a single premium in calculating the values appearing in the table". The policy also contains the table referred to, which fixes the value of the non-participating insurance which might be issued, depending upon the insured's age at time of issuance, the number of years the policy was in force, and the amount of the premium.
It is admitted that the policy in question was in force for more than three years. It is also admitted that on the lapsing of the policy the insured did nothing. During the interim between the date of its lapse and the date of the insured's death, the insured neither availed herself of the surrender value nor did she affirmatively assert or exercise any of the rights automatically granted by the policy in relation to paid-up insurance.
Defendant contends that the insured having failed to demand the application of the accumulated reserve toward the purchase of extended insurance, the automatic provision of the policy applying the reserve to the purchase of paid-up insurance is enforceable. It is further argued that Act No. 57 of 1932 grants to the insured the right to exercise the same options in regard to the application of the accumulated reserve as is allowed by Act No. 193 of 1906, with the exception that the provisions of the new statute go further in that the insurer, in the absence of the exercise of an option by the insured, is specifically allowed and permitted to apply the reserve in such manner as it, the insurer, should select, viz: either extended or paid-up insurance.
In Succession of Watson v. Metropolitan Life Insurance Company,183 La. 25, 162 So. 790, 793, our Supreme Court declared that, in enacting the statute of 1906, the legislature evidenced a clear intention of granting to the insured, upon the lapsing of a policy, the privilege of selecting one of the three well-recognized methods of applying its surrender value. These three ways are, viz.: (1) By surrendering the policy for payment in cash; (2) by using it to extend the full policy for whatever term the reserve shall bring; (3) by using it to purchase fully paid insurance. In this respect the Supreme Court said:
"The words appearing in the proviso, `no other option expressed in the policy' clearly show that the Legislature had in mind more than one way of applying a surrender value to be specified in the policy."
It will be observed that the policy which was involved in the Watson case provided for certain options, but required the insured to select in advance which option would be availed of should there be a default in premium payments. In that respect, the Supreme Court said:
"We do not find anything in the statutory provision which shows that the legislative intention was that an insurance company *Page 128 
may require the insured to agree in advance to the benefit he shall be entitled to [the exercise of one of the three options] if the policy lapses after the payment of three years' premiums."
The Court further said:
"If this were not so, an insured permitting his policy to lapse after the payment of three years' premiums could obtain neither a cash surrender value nor an extended value, as he would be obligated from the moment of the issuance of the policy to accept a paid-up value. There would be no necessity for a demand and surrender of the policy by the insured, and the proviso, `that if no other option expressed in the policy be availed of by the owner thereof, the same (reserve) shall be applied to continue the insurance in force at its full amount,' would be meaningless."
The Court further concluded that the obvious purpose of the statute was "to prevent life insurance companies from inserting in their policies conditions of forfeiture or restrictions, except those which the statute itself allows".
But defendant argues that under the provisions of Act No. 57 of 1932, a radical change has been effected in the law governing the application of the accumulated reserve on a life insurance policy, and that it had the right, upon the failure of the insured to exercise her option, to then select the manner of forfeiture permitted by the statute.
In the case of Furlong v. National Life Accident Insurance Co., 185 La. 352, 169 So. 431, 106 A.L.R. 40, the Supreme Court took cognizance of a change in the law. In that case, the Supreme Court held that under the Act of 1906, if no other option expressed in the policy was availed of by the owner thereof, the accumulated reserve was automatically applied to the purchase of extended insurance. The law made the bargain for the insured and itself applied the reserve. Under the amending and re-enacting act (Act No. 57 of 1932) the insurer was permitted to apply the reserve.
It is obvious that this was the only change effected. In other words, an insurance company would no longer be compelled to apply the reserve to the purchase of extended insurance, but could apply it either to the purchase of paid-up or extended insurance.
It is equally obvious that the Act of 1932 did not change, modify or abridge the right of the insured, upon the lapsing of the policy, to select either one of the three recognized ways of applying the surrender value of a policy. This privilege is specifically granted to an insured by the very language of the act of 1932. The language employed in the amending act is identical with that contained in the Act of 1906. In both statutes is found the proviso "if no other option expressed in the policy be availed of by the owner". This provision is susceptible to but one meaning, and that is, that the insured, by a surrender of the policy, may demand either a payment in cash, extended or paid-up insurance as was plainly held in the Watson case, supra. The mere grant to the insurer of the right of applying the reserve to the purchase of either extended or paid-up insurance (Act No. 57 of 1932) relieved the insurer of the duty of applying this reserve, as was provided by the Act of 1906, to the purchase of extended insurance. The amending act simply said that the insurer could apply the reserve in one of the specified ways. But this grant of authority did not affect, change or abrogate the law, as announced by our Courts, that the insurance company cannot, at the time of the issuance of the policy, force the insured to agree to what benefit he shall be entitled to after its lapse, nor deprive him of the optional rights and privileges recognized and afforded him by both statutes.
In the instant case, the insured was granted no privilege or option as to the manner in which, upon the lapse of the policy, the reserve would be applied. She was obligated from the moment of the issuance of the policy to accept a paid-up value whenever the policy lapsed after the payment of three years premiums. Under this restrictive stipulation the statutory proviso "if no other option expressed in the policy" became, as was said in the Watson case, "meaningless". The words "if no other option expressed in the policy be availed of by the owner", can mean but one thing and that is that the insured is allowed an option as to how the reserve shall be applied. The policy in this instance did not afford the insured any available option. Furthermore, it is only upon the failure of the owner to avail himself of an expressed option, after the policy has elapsed, that the insurer is authorized to apply the reserve. This right of the insurer is, therefore, conditional. Not having granted the insured his primary right, the secondary conditional right of the *Page 129 
insurer must necessarily fail for want of a predicate. Dominique v. Liberty Industrial Life Insurance Company, La.App., 192 So. 110.
We think it well to say, in passing, that the acts of 1906 and 1932 require that a policy of life insurance shall contain a stipulation "that it is issued subject to the provisions of this Act relating to non-forfeiture". There is no such stipulation to be found in the policy before us. Parretti v. Metropolitan Life Insurance Company, La.App., 196 So. 663; Cruze v. Life Insurance Company of Virginia, La.App., 184 So. 735.
We find no merit in plaintiff's contention that he is entitled to recover the full face value of the policy, $165, as originally issued. At the trial of the case below, it was agreed and stipulated by counsel that the policy as originally issued was, on June 2, 1938, reduced in value to $66, and that the reserve released upon this reduction, amounting to $10.34, was paid to the insured, and thereupon applied by her toward the payment of premiums due on the reduced amount of the policy, together with premiums due by her on other policies. Manifestly, the only policy which was thus extended beyond the death of the insured by application of its accumulated reserve, was the reduced policy of $66, the full face value of which the plaintiff was correctly granted recovery.
Defendant complains of that portion of the judgment rendered below wherein interest at six per cent. from the date of insured's death was allowed.
We find nothing in the record to show that proof of death was submitted. Under Act No. 17 of 1920, Section 1, life insurance companies are required to pay death claims within sixty days from date of receipt of proof of death, under penalty of interest at six per cent. per annum from date of such receipt.
In the absence of such proof we cannot approve, in that particular, the judgment rendered below. We feel justified, however, in allowing interest at five per cent. from the day on which the suit was filed. Article 554 of the Code of Practice; Article 1938 of the Revised Civil Code; Dominique v. Liberty Industrial Life Insurance Company, supra.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended so as to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of the plaintiff, William Edwards, and against the defendant, The National Life and Accident Insurance Company, Inc., in the full sum of $66 together with interest at five per cent. per annum from judicial demand. Defendant to pay all costs.
Amended and affirmed. *Page 230